UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.  3:10-CR-88-TAV-HBG |
| DAVID CARROLL LIVINGSTON, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on defendant's pro se motion for compassionate release [Docs. 56], pro se motion for updated docket sheet [Doc. 58], first motion for removal of counsel [Doc. 61], motion to appoint new counsel for compassionate release [Doc. 65], and motion for hearing on motion for compassionate release [Doc. 76]. Federal Defender Services of Eastern Tennessee ("FDSET") has filed a supplement to defendant's pro se motion for compassionate release [Doc. 81], the government has filed a response [Doc. 83], and FDSET has filed a reply [Doc. 88]. The matter is now ripe for adjudication. For the reasons set forth more fully below, defendant's motion for compassionate release will be **DENIED**.

**I.   Background**

On September 28, 2010, defendant entered a guilty plea to the two count indictment [Doc. 5] which charged him with bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and with using, carrying, and brandishing a firearm during a crime of violence in violation

of 18 U.S.C. § 924(c)(1) [Doc. 14]. Defendant was sentenced to 84 months of imprisonment as to each count, to run consecutively, for a total of 168 months, followed by five years of supervised release [Doc. 18].

Defendant is housed at FCI Schuylkill, which currently has seven (7) active cases of COVID-19 amongst the inmates, ten (10) active cases amongst the staff, and 93 staff and 213 inmates have been vaccinated against COVID-19. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited March 31, 2021). Defendant is forty (40) years old and alleges that he has asthma, high cholesterol, diabetes, obesity, and other medical issues [Doc. 63], but his medical records indicate that he has been diagnosed with prediabetes, rather than diabetes, and do not indicate that he suffers from asthma, high cholesterol, or any other severe medical condition [Doc. 87]. With respect to defendant's claim that he suffers from obesity, based on defendant's height [PSR at ¶ 66] and last reported weight from his medical records [Doc. 87], defendant has a BMI of 29.4, which classifies him as overweight rather than obese.

As additional grounds for compassionate release, defendant states that he has a young adult son[1] whose mother passed away in 2018, and defendant contends that he would like to help raise his son. Defendant also states that he has elderly relatives who need a caregiver. Finally, defendant argues that there was an error in the Presentence Investigation Report's ("PSR") calculation of his advisory guideline. Defendant is scheduled for

---

[1] The Presentence Investigation Report issued in December 2010 indicated that defendant's son was nine years old, which would make him at least nineteen years old now [PSR at ¶ 64].

release on September 20, 2022. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited March 31, 2021).

## II. Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

3

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.* Defendant seeks relief under § 3582(c)(1)(A)(i) [Doc. 81].

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

4

### III. Analysis

#### A. Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

The government states that defendant only exhausted his administrative remedies as to one of the four arguments he raises for compassionate release, but waives the exhaustion requirement in this instance [Doc. 83]. Thus, the Court may consider the merits of defendant's request.

#### B. Extraordinary and Compelling Reasons

As noted above, the Court need not consider all three statutory prerequisites if any one would serve as a basis for denial. *Elias*, 984 at 519. In this instance, though not required, the Court will address both the extraordinary and compelling reasons requirement and the §3553(a) factors.

As noted above, defendant has been diagnosed with prediabetes and is overweight. The Centers for Disease Control have identified several health conditions which increase the risk of severe illness from COVID-19. *See* People with Certain Medical Conditions,

5

Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 31, 2021). The Sixth Circuit has held that it is appropriate for a court to consider the CDC guidelines in assessing compassionate release motions. *Elias*, 984 F.3d at 521. While the CDC recognizes diabetes as increasing the risk of someone becoming seriously ill from COVID-19, it does not designate prediabetes as an increased risk factor. With respect to weight, the CDC does identify both obesity and being overweight as potential risk factors, but the Court declines to find that defendant's medical condition satisfies the "extraordinary and compelling reasons" requirement.

While the Court in no way minimizes the impact and severity of COVID-19, the Court notes that defendant recently contracted and recovered from COVID-19 with no apparent serious effects [*See* Doc. 87 at p. 5, noting that defendant tested positive on March 4, 2021, but that defendant denied any symptoms or complaints]. In addition, as the Court stated above, the Bureau of Prisons has begun vaccinating inmates against COVID-19. With this information in mind, at this time the Court finds that defendant's specific medical conditions do not rise to the level of "extraordinary and compelling."

With respect to defendant's desire to take care of his son and relatives, while the Court understands that defendant wants to help his family, the Court finds that there is insufficient evidence in the record to establish that defendant is the only person who can fill the role of caretaker. Furthermore, there is insufficient evidence that the need for a caretaker is so great as to rise to the level of "extraordinary and compelling."

The Court notes that a friend of defendant submitted a letter which states that defendant's son had been living with his grandparents, but that might no longer be the case [Doc. 80]. The letter does not indicate where the son is currently living [*Id.*]. While the Court is sympathetic with any difficulties defendant's son (who is an adult, though a young one) may be experiencing, that is a problem that confronts many inmates, and does not rise to the level of "extraordinary and compelling." The same holds true for defendant's wish to act as a caregiver for his elderly relatives.

Finally, the Court considers defendant's arguments regarding his miscalculated advisory sentencing guidelines range. Defendant's PSR calculated defendant's criminal history score as 11 [PSR at ¶ 56]. That calculation included two criminal history points for a conviction in Cocke County, Tennessee for Case No. 0788 [PSR at ¶ 52]. However, defendant has submitted evidence that that conviction had been vacated [Doc. 81-1]. Without that conviction, defendant would have had a total of only 9 criminal history points, which would have placed him in Criminal History Category IV rather than V.

Based on the calculated criminal history score, defendant faced an advisory guideline range of 168 to 189 months [PSR at ¶ 75]. Defendant argues his properly calculated guideline range is 154 to 171 months. Defendant was sentenced to 168 months, the bottom of his advisory guideline range as it was calculated [Doc. 18]. Defendant assumes that if his advisory guideline range had been properly calculated, he would have received a sentence of only 154 months. Given that defendant is expected to be released

7

in approximately six months, defendant argues that the error in the PSR has resulted in defendant serving a longer prison sentence than he should have received.

First, the Court notes that the advisory sentencing guideline range is just that, advisory. *See United States v. Booker*, 543 U.S. 220, 245 (2005); *United States v. Demma*, 948 F.3d 722, 727 (6th Cir. 2020) (holding that, while the sentencing guidelines are advisory, "they still, however, should be the starting point and the initial benchmark for choosing a defendant's sentence. The district court must calculate the range prescribed by the Guidelines before varying from them. And, after allowing the parties to argue for a particular sentence, the district court must weigh and apply the range of factors outlined in 18 U.S.C. § 3553(a).") (internal citations and quotations omitted).

The Court took the advisory guidelines into consideration when it issued its sentence, but was not bound by them. In addition, the sentence defendant received is within the advisory guideline range he argues should have applied to his case.

The Court further notes that defendant did not object to the PSR during sentencing [Doc. 47 at p. 5]. The Court also notes that defendant filed a motion pursuant to 28 U.S.C. § 2255 which, *inter alia*, challenged the PSR's criminal history calculation, but not as to the Cocke County conviction which is now at issue [Doc. 19]. Defendant was given leave to pursue a direct appeal on the issues raised in his § 2255 motion [Doc. 44]. The Sixth Circuit considered defendant's arguments (again, which did not include the Cocke County conviction now at issue), and ruled against him, affirming the judgment of conviction and sentence imposed by this Court [Doc. 53].

8

Defendant now seeks to use a compassionate release motion to argue an issue he could have raised in his original § 2255 motion. The Sixth Circuit has held that "a compassionate release motion is not the proper vehicle for arguments 'that were or could have been raised on direct appeal or in a § 2255 motion, let alone defendants . . . who already have completed a § 2255 proceeding and who are subject to the restrictions on filing second or successive § 2255 motions.'" *United States v. Toaz*, No. 20-1561, 2020 U.S. App. LEXIS 33439, at *5-6 (6th Cir. Oct. 22, 2020) (citations omitted). Accordingly, the Court finds that the error in the calculation of defendant's criminal history score cannot satisfy the "extraordinary and compelling reasons" requirement.

After considering defendant's arguments, as well as the record as a whole, including the many pro se supplements defendant has filed on the issue of compassionate release, the Court finds that defendant has not established the "extraordinary and compelling reasons" needed to justify compassionate release.

### C. § 3553(a) factors

"§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, *16-17 (6th Cir. 2020) (internal citations omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To

9

this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. § 3553(a); *see also Pepper*, 526 U.S. at 491. At sentencing the Court conducted a thorough analysis of the § 3553(a) factors as they then applied to defendant, and the Court incorporates that analysis in the instant ruling [Doc. 47 at pp. 11-17].

The Court begins with the criminal conduct at issue in this case. On June 29, 2010, defendant robbed the FSG Bank ("FSG") in Dandridge, Tennessee [PSR at ¶ 17]. He entered FSG and handed the teller a note which read "Put all that money on that counter and know (sic) one will B (sic) hurt keep your hands on top of the counter or you will die" [*Id.*]. After reading the note, the teller looked at defendant, and defendant tapped his body where he had concealed a .22 caliber revolver [*Id.*].

The teller placed $1,930.00 on the counter, including a dye pack [*Id.* at ¶ 19]. Defendant took the money and fled the bank [*Id.*]. After exiting the bank, the dye pack went off [*Id.*]. A female witness in the parking lot observed the dye pack explode and began to conduct surveillance on the defendant [*Id.* at ¶ 20]. Defendant noticed the witness was following him, and he pulled his gun, pointed it at her, and threatened to kill her if she didn't leave [*Id.* at ¶¶ 20, 29]. Defendant entered his vehicle and drove away, but as he was leaving police arrived on the scene [*Id.* at ¶ 22-23]. A car chase ensued, resulting in

10

defendant crashing into multiple law enforcement vehicles before finally crashing his own vehicle, at which point he was arrested [*Id.* at ¶ 23-24]. At trial, defendant admitted that he was on drugs when he robbed the bank [Doc. 47 at pp. 6, 9].

This was a very serious offense, and while no one was physically injured, both the bank teller and the witness in the parking lot had their lives threatened. In addition, defendant crashed into multiple law enforcement vehicles, potentially endangering the lives of law enforcement officers. Thus, the Court fashioned a sentence which reflected, *inter alia*, the serious nature of the offense, the need to promote respect for the law, provide just punishment, the need for adequate deterrents, and the need to protect the public from further crimes by the defendant.

The fact that defendant was on drugs when he committed the crime not only does not excuse the act, but is relevant to the instant motion. While in prison, defendant has continued to use drugs. Defendant has had several disciplinary incidents while in prison relating to the use of narcotics, the most recent of which occurred on December 3, 2019 [Doc. 83-4]. During sentencing, defense counsel described defendant as a "person with a drug problem," and said that defendant both needed help and wanted help [Doc. 47 at p. 8]. The Court recommended that defendant receive 500 hours of substance abuse treatment from the Bureau of Prisons [*Id.* at p. 17], but prison records show that defendant declined substance abuse treatment [Doc. 83-2 at p. 3]. The Bureau of Prisons also classifies defendant as a high risk of recidivism [*Id.* at p. 1].

11

Defendant's continued use of drugs is of particular note, as it was apparently drug use which led defendant to rob a bank. Defendant's ongoing illegal drug use indicates both that defendant lacks respect for the law, and that, once released, defendant could easily find himself repeating his past criminal behavior to obtain the money needed to support his drug habit. In such an instance, even though defendant has served the majority of his sentence, it is clear that there is a risk that if released early, defendant would engage in further illegal drug activity and might pose a risk to the public. Accordingly, the Court finds that the sentencing factors weight against granting compassionate release.

In reaching this decision, the Court has considered the parties' filings, including defendant's medical and prison records, the sentencing transcript, the presentence investigation report, the § 3553(a) factors and other relevant law, and the record as a whole. While the Court is sympathetic to defendant's medical condition and the difficulties faced by his son and his elderly relatives, those are only part of the compassionate release calculus. On the record before the Court, the sentencing factors weigh against early release.

### D. Request for Counsel

Defendant has requested that counsel be appointed to assist him with his motion for compassionate release, as well as asking that new counsel be appointed other than FDSET [Docs. 65, 72]. This Court's Standing Order No. 19-04 provides, in pertinent part:

> Federal Defender Services of Eastern Tennessee ("FDSET") is hereby **APPOINTED** to represent a defendant if that defendant files a section 3582(c)(1)(A) motion directly with this Court pursuant to section 603(b) of the FIRST STEP Act. FDSET shall file a supplement to defendant's pro se

12

> motion without delay. If FDSET determines that defendant's motion needs no supplementation, then FDSET shall file a notice stating so. FDSET shall also notify the defendant that it will not file a supplemental motion.
>
> FDSET is also **APPOINTED** if a defendant contacts FDSET to file the motion on the defendant's behalf and if FDSET determines the motion would not be frivolous. In addition, previously-appointed CJA counsel may file a motion on behalf of their clients if contacted to do so and if the previously-appointed CJA counsel determines the motion would not be frivolous. FDSET or another attorney appointed pursuant to this Order shall file a non-frivolous motion on the defendant's behalf without delay.

SO 19-04. Thus, the Court has already appointed FDSET to assist in appropriate compassionate release cases. The Court notes that FDSET did file a supplement on defendant's behalf, as well as a reply to the government's response [Docs. 81, 88].

To the extent that defendant argues he has been prejudiced because counsel other than FDSET was not appointed, the Court notes that there is no constitutional right to counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has discretion, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond

13

the capability of an ordinary pro se litigant. Accordingly, defendant's requests for the appointment of counsel other than FDSET [Docs. 61, 65] are **DENIED**.

### E. Other Outstanding Motions

Defendant has two other outstanding motions related to his motion for compassionate release. The first is a motion [Doc. 58] requesting an updated docket sheet. The Clerk's Office has provided defendant with updates to the docket, and the motion is therefore **DENIED as moot**. The second outstanding motion [Doc. 76] requests a hearing on defendant's motion for compassionate release. The Court finds that a hearing is not necessary for the Court to resolve defendant's motion for compassionate release, and therefore the request for a hearing is **DENIED**. The defendant has other outstanding motions [Docs. 66, 72, 79] not related to defendant's motion for compassionate release, and those other motions will be addressed in due course.

## IV. Conclusion

Accordingly, for the reasons set forth more fully above, defendant's motions for compassionate release [Docs. 56, 81] are **DENIED**, defendant's motions for the appointment of new counsel [Docs. 61, 65] are **DENIED**, defendant's motion for an updated docket sheet [Doc. 58] is **DENIED as moot**, and defendant's motion for a hearing [Doc. 76] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE